IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

**VICKERY DESIGN, INC.**

     **Plaintiff,**

**vs.**             CIV No. 96-25 JP/DJS

**ASPEN BAY COMPANY, INC.,**

     **Defendant.**

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND MEMORANDUM OF DECISION

The parties presented their evidence at a non-jury trial on April 28, 29 and 30, and May 29, 1997. Subsequently, counsel submitted post trial briefs on August 29, 1997 and supplemental post-trial briefs on January 15, 1998. On February 13, 1998, defendant filed objections to plaintiff's supplemental post-trial brief, and on February 19, 1998, plaintiff filed its response to defendant's objections. Having considered the evidence, the law and the parties' arguments, I now make findings of fact in accordance with Federal Rule of Civil Procedure 52.

### **FACTS PROVEN BY A PREPONDERANCE OF THE EVIDENCE**

1. Vickery Design, Inc. is a New Mexico Corporation which designs, manufactures, and distributes various products including a miniature corn candle, the "Corndle," from which Vickery Design, Inc. derives the vast majority of its income (Tr. at 227-228; 301 (Margaret Ross ["Ross"]); and Exhibit ("Exh.") FW).

2. Aspen Bay, Inc. is a Mississippi Corporation, which manufactures and sells an assortment

       of candles and candle products.  (Tr. at 599-600 (Walter Stubbe ["Stubbe"]); Exh. 61, 63, 64, 65 & BU).

3. Earl Vickery is the Secretary-Treasurer of Vickery Design, Inc., and Margaret Ross is the President of Vickery Design, Inc. (Tr. at 19 (Vickery), 226 (Ross))

4. Walter Stubbe is the President of Aspen Bay, Inc.  (Tr. at 586, 675 (Stubbe))

5. In early 1990, Russell E. Vickery and his wife, Margaret Ross, were visiting Tucson.  (Tr. at 21, 111 (Vickery))  There they saw a candle in the shape of a full size ear of corn.  (Tr. 21)  From this experience, during the Fall of 1990, Mr. Vickery decided to created a candle in the shape of a miniature ear of corn.  (Tr. at 21)

6. In August of 1990, Mr. Vickery and Ms. Ross looked for an ear of miniature corn which they felt was suitable for creating corn candle molds. (Tr. at 21 (Vickery))  They shopped at several places in Albuquerque for an appropriate ear.  (Tr. at 21)

7. In selecting an ear of corn, the Vickerys sought certain features.  They wanted something that would be "attractive, small in size, [and] cute . . . ." (Tr. at 21, 68 (Vickery)) They found and purchased an appropriate ear of corn at a shop in Albuquerque.  (Tr. at 21-22) Mr. Vickery then used that ear to begin making molds for pouring wax in order to make miniature corn candles.  (Tr. at 22-27)   This process began by dipping the actual corn in wax to form a wax master. (Tr. at 22)

8. Mr. Vickery's goal was to create an "idealized", i.e., realistic-looking, miniature corn candle.  (Tr. at 21-22, 41, 63 (Vickery))  Mr. Vickery testified that he "wanted [his] candle to look like . . . a perfect miniature ear of corn . . . ."  (Tr. at 63)  "[He] tried for a realistic representation of [his] concept of an ear of corn as [he] possibly could get . . . ."

(Tr. at 63) "[He] was "looking for something that was [his] ideal of an ear of corn." (Tr. at 41)

9. Vickery, the Secretary-Treasurer of the Plaintiff corporation, created Plaintiff's corn candle mold using a multistep process beginning with dipping a dried miniature ear of corn in wax and then replacing missing or defective kernels, and hand sculpting each kernel to create an idealized representation of an ear of corn. (Tr. at 19; 21 - 33; 85 - 86; (Vickery); Exhs. 57 and 68) These steps ultimately lead to the development of two, heat-vulcanizing silicon rubber masters. (Tr. at 22-28, 36 (Vickery); Exh. CW) Vickery Design now employs a two-cavity frame for the silicon rubber masters in order to make two candles at a time. (Tr. at 28 (Vickery))

10. Vickery Design's miniature corn candle was submitted to the Copyright Office for registration. On May 14, 1991, Vickery Design received Copyright Registration No. VA 471 731. (Tr. at 229-230 (Ross); Exhs. 1, DC) On May 16, 1994, Vickery Design received Copyright Registration No. VA 638 636. (Tr. at 231-232; Exhs. 3, DD)

11. The corn candle in Copyright Registration No. VA 471 731 was inside of a corn husk, while the corn candle in Copyright Registration No. VA 638 636 did not have a husk. (Exhs.1, 3, DC; DD; Tr. at 231(Ross))

12. Beginning in June of 1994, the defendant, Aspen Bay Company, began manufacturing and selling candles in the shape of a miniature ear of corn. (Tr. at 96) The mold for the Aspen Bay candle was designed by Pat Arnett, who today works for Aspen Bay as a consultant and candle designer. (Tr. at 295, 386, 407-411, 414-415, 421 (Ross))

13. In making the mold for the Aspen Bay candle, Mr. Arnett began with a dried miniature ear

of corn which had been purchased by Walter Stubbe and his wife while on vacation in New England during the 1980's.  (Tr. at 415-417, 427-428 (Arnett), 674, 689 (Stubbe), 221 (Pitts), Depo. of Sandra Stubbe at 11; Exhs. AU, FK, FJ)  Mr. Arnett made the corn candle mold by taking the ear of corn purchased by Mr. Stubbe and his wife, and creating a silicon mold from it, after making certain cosmetic improvements.  (Tr. at 416-418, 420-422 (Arnett), 689 (Stubbe); Exhs. FI; FH)

14. In designing a miniature corn candle in 1994, Mr. Arnett incorporated a swirl.  (Tr. at 419-423 (Arnett))  This was done by twisting a "silicon floppy" prototype from which the mold was ultimately fashioned.   (Tr. at 419-420, 448 (Arnett))

15. Before Aspen Bay began selling miniature corn candles, Aspen Bay had sold candles in the shapes of hollies, pumpkins, "pineapple pinecones," pomegranates, peaches, strawberries, and other natural items.  (Tr. at 637-639, 641, 643, 674, 690 (Stubbe); Exhs. 63, G, M, N, AM, CA, CD, FN) When Aspen Bay began selling its miniature corn candle, it also began selling candles in the shape of oak twig sticks, oak trees, and acorns.  (Tr. at 414 (Arnett), 638-642, 643, 674-75, 685, 689-90, 694 (Stubbe); Exhs. 63, AM) These and other candles in the shapes of naturally occurring fruits and vegetables were designed for Aspen Bay by Pat Arnett.  ( Tr. at 412, 415 (Arnett), 673-674 (Stubbe); Exhs. AN, FL)

16. All of Aspen Bay's many natural candles are molded from produce purchased at a grocery store, or from items picked up in nature or from a florist.  (Tr. at 695 (Stubbe))

17. The size, diameter, taper, weight, and colors of Aspen Bay's miniature corn candles are substantially similar to the size, diameter, taper, weight, and colors of Vickery Design's miniature corn candles.  (Tr. at 670-671, 720 (Stubbe); 57-59 (Vickery);  284-87 (Ross);

4

Exhs. 8 and 9).

18. Aspen Bay's miniature corn candle is scented; Vickery Design's miniature corn candle is not. (Tr. at 68-71 (Vickery))

19. The kernels in Vickery Design's miniature corn candle are smooth, rounded, and similar in size and shape. Many of the kernels in Aspen Bay's miniature corn candle are not smooth and rounded; several kernels are pointed, and many are of different sizes and shapes. Some of the kernels in Aspen Bay's miniature corn candle are chipped, incomplete, or appear to be melted together, whereas all of the kernels in Vickery Design's miniature corn candle appear complete. Generally, the kernels contained in the Aspen Bay miniature corn candle are greater in number and of a smaller size than the kernels in Vickery Design's miniature corn candle. The gaps between the rows of kernels in the Aspen Bay miniature corn candle are generally deeper than the gaps between the rows of kernels in the Vickery Design miniature corn candle. (*Compare* Exh. 8 (Vickery Design's miniature corn candle) *with* Exh. 9 (Aspen Bay's miniature corn candle))

20. Aspen Bay's miniature corn candle is not a mold copy of Vickery Design's miniature corn candle. (Tr. at 92, 94 (Vickery))

21. Vickery Design's miniature corn candle is sold both husked and unhusked (naked). A "vast majority" of Vickery Design's miniature corn candles are sold with a husk. None of the Aspen Bay miniature corn candles are sold with a husk. (Tr. at 29, 102-103 (Vickery), 346 (Ross), 491 (Browning))

22. The design of Aspen Bay's miniature corn candle incorporates a visible swirl. (Tr. 419, 421-423) Vickery Design's miniature corn candle does not contain a swirl. (*Compare*

5

Exh. 8 (Vickery Design's miniature corn candle) *with* Exh. 9 (Aspen Bay's miniature corn candle))

23. Vickery Design's miniature corn candle has a base; Aspen Bay's miniature corn candle does not. (Tr. 59 (Vickery); *compare* Exh. 8 (Vickery Design's miniature corn candle) *with* Exh. 9 (Aspen Bay's miniature corn candle))

24. On May 16, 1995, Vickery Design was issued a trademark in the supplemental register, Registration No. 1,894,730, by United States Patent and Trademark Office for its configuration of its miniature corn candle. (Exhs. 5, 6; Tr. at 232 (Ross)

25. On February 12, 1996, Vickery Design filed an application with the United States Patent and Trademark Office for registration in the principal register for the configuration of its corn candle. Initially, the Trademark Examiner rejected the application on the ground that the configuration mark was functional. However, after a response was filed, the rejection was overcome and the Examiner approved the application for publication.   (Exh. 7, and Notice of Publication Under 12(a) from the Trademark Office dated July 4, 1997 (attached to July 14, 1997 letter to Court from Vickery Design); and Tr. at 326-33 (Ross))

26. Vickery Design's trademark application currently is pending in the United States Patent and Trademark Office. (Exh. 7, Notice of Publication Under 12(a) from the Trademark Office dated July 4, 1997 (attached to July 14, 1997 letter to Court from Vickery Design); and Tr. 326 - 333 (Ross))

27. Aspen Bay's name clearly appears on the packaging for its corn candles. (Exhs. AV, AQ, FR; Tr. 74)  The name "Vickery Design" does not appear on Aspen Bay's products. By

the same token, the name "Vickery Design" clearly appears on each individual tag affixed to the miniature corn candles sold by Vickery Design.  (Tr. 245-246)

## CONCLUSIONS OF LAW

**FEDERAL COPYRIGHT INFRINGEMENT CLAIM  (Complaint Count I)**

1. In order to prevail on a claim of copyright infringement, a plaintiff must establish that: (1) it possesses a valid copyright; and (2) the defendant "copied" <u>protectable elements</u> of the copyrighted work.  *Country Kids `N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996) (citing *Feist Pubs., Inc. v. Rural Tel. Serv., Co.,* 499 U.S. 340, 361 (1991), and *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 831 (10th Cir. 1993)) (emphasis added).

2. The work at issue in this case is a candle in the shape of a miniature ear of corn.  Vickery Design claims the exclusive right under copyright law to manufacture a candle in the form of a miniature ear of corn.  In determining whether this is a protectable work, the Court must look to the underlying form or structure of the work and determine if it is original.  *Country Kids 'N City Slicks Inc. v. Sheen*, 77 F.3d 1280, 1286 (10th Cir. 1996).  *See also* 17 U.S.C. §102; *Feist Pubs., Inc. v. Rural Tel. Serv., Co.*, 499 U.S. 340, 347-48, 361 (1991) (holding that the "work" of a telephone book was not original because the data within it was not original); *Entertainment Research Group Inc. v. Genesis Creative Group Inc.*, 853 F. Supp. 319 (N.D. Cal. 1994) (three-dimensional costumes of pre-existing cartoon characters were not original works entitled to protection, since the costumes were only exact, life-size replications of characters and did not reflect any original authorship), *aff'd*, 122 F.3d 1211 (9th Cir. 1997), *cert. denied,* 118 S.Ct. 1302 (1998); *Gallery House, Inc. v. Yi*, 582 F. Supp. 1294 (N.D. Ill. 1984) (mold maker who simply followed design from design company in producing molds for statues was not the "author" of any designs

and could not claim copyright).

3. A three-dimensional form of a miniature ear of corn cannot be claimed as an original work by a party, as it occurs within nature. Such an underlying form is pre-existing in nature and cannot be the subject of a copyright for a sculptural work. *See* 17 U.S.C. §102(a) (providing that copyright protection extends only "to original works of authorship fixed in any tangible medium of expression."). *See also Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971) (idea of jewelry pin in the shape of a bee cannot be protected by copyright); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974) (a manufacturer "cannot, by obtaining a copyright upon one design of a turtle pin, exclude all others from manufacturing gold turtle pins on the ground that they are substantially similar in appearance."); *Meade v. United States*, 27 Fed. Cl. 367 (1992) (a heart-shaped picture of earth is an "idea" within the public domain that cannot be protected by copyright), *aff'd*, 5 F.3d 1503 (Fed. Cir. 1993); and *PPS, Inc. v. Jewelry Sales Representatives, Inc.*, 392 F. Supp. 375, 382 (S.D.N.Y. 1975) ("plaintiff cannot exclude all others from manufacturing costume jewelry in the form of an apple or other fruit . . . ."). To hold otherwise would bestow a monopoly on an individual's right to make a candle out of any vegetable simply by filing a copyright and paying a $20 registration fee.

4. The works in Copyright Registration No. VA 471 731 and Copyright Registration No. VA 638 636 are protectable to the extent of the creative and artistic modifications of individual kernels in the wax sculptures, and not as to the overall size and configuration of the miniature corn candle. Aspen Bay did not copy any of the artistic and creative

improvements Vickery Design made to its miniature corn candle.

5. The Copyright Act does not allow an individual or corporation to assert exclusive protection as to ideas. 17 U.S.C. §102(b). Protection is only accorded for the <u>expression</u> of an idea. *Gates Rubber Co. v. Bando American, Inc.*, 798 F. Supp. 1499, 1504 (D. Col. 1992) ("copyright law does not protect ideas, but only expressions of ideas"), *aff'd in part and reversed in part on other grounds*, 9 F.3d 823, 836 (10th Cir. 1993) ("One of the fundamental tenets of copyright law is that protection extends only to the author's original expression and not to the ideas embodied in that expression.").[1] *Aliotti V. R, Dukin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls.") *Accord, Country Kids 'N City Slicks Inc. v. Sheen*, 77 F.3d 1280, 1285 (10th Cir. 1996). The "idea" of a miniature ear of corn as a candle cannot be monopolized by Vickery Design or any other candle company.

6. In *Country Kids*, the Tenth Circuit stated that:

> In the instant case, we conclude that the district court correctly characterized the wooden form of the traditional paper doll as an idea rather than a protected expression. Plaintiffs cannot demonstrate infringement merely because Defendants produced wooden paper dolls; nor

---

[1] In *Gates,* which involved a computer program infringement action, the Tenth Circuit utilized the "abstraction-filtration-comparison test." *Id.,* 9 F.3d at 841. The abstraction-filtration-comparison test requires that the court at the abstraction stage separate ideas that are not protectable from the particular expression of the work, then filter out nonprotectable components of the product from the original expression and finally compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar. *Country Kids 'N City Slicks Inc. v. Sheen*, 77 F.3d 1280, 1284-85 (10th Cir. 1996). In *Country Kids,* the Tenth Circuit stated, "[W]e see no reason to limit the abstraction-filtration-comparison approach to cases involving computer programs." *Id.*, 77 F.3d at 1284-85 n.5.

> may they rely on similarities between their work and Defendants' work that necessarily stem from this unprotectable idea.

*Id*. 77 F.2d at 1286 (citation omitted).  In so stating, the Tenth Circuit favorably cited *Concrete Machinery Co., v. Classic Lawn Ornaments, Inc.* 843 F.2d 600, 607 (1st Cir. 1988).  In *Concrete Machinery*, the First Circuit described the distinction between idea and expression as follows:

> As an example in the case before us, appellant has a copyright in a design of concrete "life size deer."  The idea behind this particular expression can be briefly described as a "realistic-looking concrete deer."  Appellant cannot prohibit others from appropriating this idea; it can, however, prohibit any actual copying of its own version of a "realistic-looking concrete deer."  Yet, it has a problem of proof: because the statue is a detailed replica of a real deer, the deer, in essence, supplied most of the features which any subsequent artist can also take from the real deer.  To prove copying, then, Concrete must show *substantial* similarity, between works, in those features over which it exercised discretion while portraying a "realistic-looking concrete deer."  These features include such aspects as pose, posture, and facial expression.

843 F.2d at 607 (italics in original, underlining added).

Likewise, Vickery Design asserts copyright protection for a design of a wax candle in the shape of a miniature ear of corn.  The idea behind this particular expression can be briefly described as a "realistic-looking miniature corn candle."  Vickery Design cannot prohibit others from appropriating this "idea"; it can prohibit the copying of its own original expression of the idea of "realistic-looking miniature corn candle."  However, Vickery Design has a problem of proof: because the candle is a detailed replica of a real miniature ear of corn, the miniature ear of corn supplied the features which any subsequent artist can also take from a real miniature ear of corn.  To prove copying, then, Vickery Design must show substantial similarity between those features over which it exercised

11

discretion while portraying a "realistic-looking miniature corn candle." Mr. Vickery has admitted there was no mold copying. (Tr. 92, 94)

7. The only features over which Vickery Design exercised discretion are the cosmetic improvements of the kernels that Mr. Vickery sculpted. Inspection of the two candles reveals that Aspen Bay did not copy these features, but only duplicated the appearance of a separate, different, albeit similar, miniature ear of corn preexisting in nature. Hence, there has been no infringement by Aspen Bay of any <u>protectable</u> work by Vickery Design.

8. Because an ear of corn is a preexisting object, no copyright protection subsists in the size, shape, color and medium of that object. *Country Kids 'N City Slicks Inc. v. Sheen*, 77 F.3d 1280, 1286 (10th Cir. 1996). *Country Kids* involved copyrights describing wooden dolls modeled after the traditional paper dolls. The Tenth Circuit agreed with the district court's characterization of the wooden form of the traditional paper doll as an idea rather than protected expression. *Id.* The shape, size and medium of the dolls were held not to be copyrightable because they are "typical paper doll features found in the public domain." *Id.* at 1287. This being the case, Vickery Design may not compare the basic features of a miniature ear of corn found within both its own candle and that of Aspen Bay in order to claim copyright infringement. *Id.* In the present case, any similarities between the parties' candles "necessarily stem" from unprotectable features. *Id.* at 1286.

9. The protectable matters within Vickery Design's miniature corn candle include the cosmetic improvements of the kernels in the candle created by Mr. Vickery. Protection would not extend to the length, diameter, or overall configuration of the candle, as these features are derived from a pre-existing form or supplied by the corn itself. This being the

case, Vickery Design may not claim the exclusive right to manufacture and sell an entire miniature corn candle, but may only claim protection for that portion of the candle, i.e., the sculpted kernels themselves, that were actually "authored" by Mr. Vickery. *Country Kids 'N City Slicks Inc. v. Sheen*, 77 F.3d 1280, 1285-87 (10th Cir. 1996).

10. The Copyright Act was not written to protect the appearance of a copyrighted work; rather, it was written to protect authors from "copying" that appearance. 17 U.S.C. §106. It does not universally restrict individual creativity by preventing subsequent authors from independently creating a work which is the same as or similar to one which is already copyrighted. *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936), *aff'd,* 309 U.S. 390 (1940); *Streeter v. Rolfe*, 491 F. Supp. 416, 420, (W.D. La. 1980) ("What the copyright statute forbids is copying another's work. Absent copying, there can be no infringement of a valid copyright."). Moreover, copying is only prohibited as to those features of a work that are protectable. *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d at 1287.

11. Because the Copyright Act does not protect the appearance of a work of art, but only the <u>copying</u> of that appearance, individuals are free to independently create substantially similar works of art. For example, two individuals could each photograph the skyline of Albuquerque and create identical pictures without one infringing the other's copyright. Likewise, two individuals could each paint the same field of corn without one copying the other's work. Similarly, two individuals could each mold an object from nature to obtain a wax sculpture without "copying" each other's creations. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 492 (4th Cir. 1996) ("Several

sculptors may copy a deer, <u>even the same deer</u>, in creating a sculpture, and each may obtain copyright protection for his or her own expression of the original." (emphasis added)), *cert. denied*, 117 S.Ct. 53 (1996). The fact any of these authors did or did not see or know about the other's works does not establish infringement of any alleged copyrighted features, as the creations were not copied from a work of art, but were independently created.

12. Aspen Bay did not copy Vickery Design's sculptural work of a miniature corn candle. The Aspen Bay corn candle is derived from molds fashioned from a preexisting ear of corn. The molds were created from a miniature ear of corn purchased by Walter Stubbe years earlier while on vacation in New England. Hence, the Vickery Design corn candle was not copied, and no copyright infringement occurred.

13. Vickery Design's distinctive expression of the idea of a miniature corn candle has not been copied by Aspen Bay or Pat Arnett. This conclusion is confirmed by visual comparison of the two corn candles which shows that they did not originate from the same miniature ear of corn. Any similarity between the two candles "stems solely from the commonality of the subject matter" and is not indicative of, or proof of, copying. *See, e.g., Country Kids 'N City Slicks Inc. v. Sheen*, 77 F.3d 1280, 1285-86 (10th Cir. 1996).

14. Because Vickery Design's copyrighted miniature corn candle and Aspen Bay's miniature corn candle share only unprotectable subject matter, it is unnecessary to reach the issues of ownership and copying as a matter of fact. *Meade v. U.S.*, 27 Fed. Cl. 367, 370 (1992) (citing *Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 206 (9th Cir. 1988) and *Wichham v. Knoxville Int'l Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.

1984)).

## **TRADEMARK/TRADE DRESS CLAIMS  (Complaint – Count II ("Federal Trademark Infringement"), Count III ("Federal Unfair Competition"), and Count IV ("State Trademark Dilution")**

15. Trademark infringement is "[t]he unauthorized use of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in a way that is likely to cause confusion in the marketplace concerning the source of the different products...." *First Savings Bank v. First Bank System, Inc.*, 101 F.3d 645, 651 (10th Cir. 1996).

16. The following factors are relevant in a trademark infringement action to a determination whether a likelihood of confusion exists:

> (a) the degree of similarity between the marks, including the marks' appearance, pronunciation, suggestion, and manner of display; (b) strength or weakness of the plaintiff's mark; (c) the intent of the alleged infringer in adopting its mark; (d) similarities and differences of the parties' goods, services and marketing strategies; (e) the degree of care likely to be exercised by purchasers of the goods or services involved; and (f) evidence of actual confusion, if any.

*Heartsprings, Inc. v. Heartsprings, Inc.,* No. 97-3011, 1998 WL 201538, *2 (10th Cir. April 20, 1998).  The likelihood of confusion test "is the basic test of both common-law trademark infringement and federal statutory trademark infringement." J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:1, at 23-6 (4th ed. 1998).

17. In a trade dress infringement case, a plaintiff must make two showings:

> First, the plaintiff must show either that: (a) its product's trade dress features (or feature) are inherently distinctive because their intrinsic nature is such as to almost automatically tell a customer that they refer to a brand, or (b) the trade dress has become distinctive through acquisition of secondary meaning, so that its primary significance in the minds of potential consumers is no longer as an indicator of something about the product itself but as an indicator of its source or brand. Second, a plaintiff must show that potential customers are likely to be confused by the defendant's trade dress into thinking that the defendant is affiliated, connected

15

>   or associated with the plaintiff or that the defendant's goods originated with, or are sponsored or approved by the plaintiff.

*Voronado Air Systems v. Duracraft Corp.*, 58 F.3d 1498, 1502-1503 (10th Cir. 1995) (internal citations and quotations omitted), *cert. denied*, 516 U.S. 1067 (1996).

18. It is appropriate to stay ruling on the trademark and trade dress infringement claims asserted in Counts II ("Federal Trademark Infringement"), Count III ("Federal Unfair Competition") and Count IV ("State Trademark Dilution") of Vickery Design's complaint because Vickery Design presently has a trademark application pending before the United States Patent and Trademark Office for registration of the configuration of its corn candle in the Principal Register. The application has been examined and approved for publication. 15 U.S.C. § 1062(a).

19. Stays of district court trademark infringement actions have been granted by courts deferring to the greater technical expertise of the Patent and Trademark Office. *See C-Cure Chem. Co. v. Secure Adhesives Corp.*, 571 F. Supp. 808 (W.D.N.Y. 1983) (staying proceedings under doctrine of primary jurisdiction and deferring to the Trademark Trial and Appeal Board expertise); *Driving Force, Inc. v. Manpower, Inc.*, 498 F. Supp. 21 (E.D. Pa. 1980) (proceedings stayed under doctrine of primary jurisdiction). *See also Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849 (4th Cir. 1979) ("The decision of the Patent Office, as well as stipulations and admissions by the parties in connection with the proceeding there, might simplify the remaining problems and perhaps entirely eliminate some matters (hopefully the whole litigation) from the necessity of subsequent judicial determination.); *Schwinn Bicycle Co. v.*

*Abikaran*, 453 F. Supp. 57 (D.P.R. 1978); *Kemin Indus., Inc. v. Watkins Prods., Inc.,* 183 U.S.P.Q. 799 (D. Minn. 1974); *Sun Drop Sales Corp. v. Seminole Flavor Co.*, 159 F. Supp. 828 (E.D. Tenn. 1958).

20. The Patent and Trademark Office's determination of whether to register Vickery Design's trademark on the Principal Register is likely to affect the claims in Count II ("Federal Trademark Infringement"), Count III ("Federal Unfair Competition") and Count IV ("State Trademark Dilution").

21. The Patent and Trademark Office has expertise on the issue of whether a mark is suggestive, descriptive, and/or has achieved secondary meaning:

> [T]he Patent and Trademark Office is the administrative agency initially charged with determining the registerability of a mark or figure and in exercising that function it must necessarily decide whether the mark is descriptive or suggestive .... Of course, if the mark is refused registration because it is found to be descriptive, the applicant may proceed under § 1052(f) to assert that its mark, though descriptive, has acquired ... secondary meaning, and, if the applicant proves secondary meaning, it can secure registration.

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528-29 (4th Cir.1984). *See also GTE Corp. v. Williams*, 904 F.2d 536 (10th Cir 1990) (quoting *Pizzeria Uno* for same proposition), *cert. denied*, 498 U.S. 998 (1990).

22. The Patent and Trademark Office also has expertise on the issue of likelihood of confusion. *See, e.g., D.M. & Antique Import Corp. v. Royal Saxe Corp.*, 311 F. Supp. 1261 (S.D.N.Y. 1970); *Carling Brewing Co. v. Philip Morris, Inc.*, 297 F. Supp. 1330 (N.D. Ga. 1968).

## NEW MEXICO UNFAIR PRACTICES ACT AND COMMON LAW UNFAIR COMPETITION CLAIMS (Complaint – Count V ("State Unfair Practices") and Count VI ("Common Law Unfair Competition")

23. The relevant elements for a claim under New Mexico's Unfair Practices Act, NMSA 1978 §§ 57-12-1 to -22 (Repl.Pamp. 1987 & Cum.Supp.1989) are, "(1) a false or misleading representation (2) knowingly made (3) in connection with the sale of goods or services (4) in the regular course of trade or commerce (5) which may, tends to, or does deceive or mislead any person." *Thompson v. Youart*, 109 N.M. 572, 576 (Ct. App. 1990).

24. The false or misleading misrepresentation must be knowingly made. *Thompson*, 109 N.M. at 576; *Richardson Ford Sales, Inc. v. Johnson*, 100 N.M. 779, 782 (Ct. App. 1984); § 57-12-2(D).

25. Although Aspen Bay may have knowingly copied Vickery Design's idea of a miniature corn candle, I have not made a factual finding on this subject. I have found and conclude that there is insufficient evidence showing that Aspen Bay knowingly misrepresented that its miniature corn candle was the work of Vickery Design. *Thompson*, 109 N.M. at 576.

26. Absent patent or copyright protection, Vickery Design's miniature corn candle is in the public domain and Aspen Bay could freely copy the idea of a miniature corn candle. *Thompson,* 109 N.M. at 577.

27. Vickery Design's Count V ("State Unfair Practices") and Count VI ("Common Law Unfair Competition") are indistinguishable. The New Mexico Court of Appeals has noted:

> Although the trial court and the parties argue that this is a case of common law unfair competition, we are not able to distinguish the claim from a claim under the Unfair Practices Act. The New Mexico act is modeled after the Uniform Deceptive Trade Practices Act....The Uniform Deceptive Trade Practices Act was designed to bring uniformity to the law of unfair competition and to remove undue

restrictions on the common law action for deceptive trade practices.

*Thompson,* 109 N.M. at 576.  Because Vickery Design has failed to prove its claim under the Unfair Practices Act, its unfair competition claim similarly fails.

_____
UNITED STATES DISTRICT COURT JUDGE